, Scott Grimes. Good afternoon. Please support the council. My name is Ken Beame. I represent the employer of Cargill in this matter. We get the end of this session with the permanent parcel disability issue. You're aware that we disagree with the circuit court. We think their findings on permanent parcel disability should be reversed and the decision of the commission should be reinstated. Procedurally, as you are aware, this was a disputed bilateral carpal tunnel syndrome claim. Proceeded in front of arbitrator Gallagher. My client lost on the accident causation issue. Claimant met his burden on those issues. But the arbitrator found that the claimant did not meet his burden on the issue of permanent parcel disability. The case gets reviewed up in front of the commission and they unanimously affirm the decision of arbitrator Gallagher. Specifically on that permanent parcel disability issue, even the employee representative agreed that there was no showing of any permanent parcel disability. Reviewed to the circuit court, he reverses. Despite the fact that the claimant has a difficult burden. Not only manifest weight of the evidence, but the substantial deference that is given to the commission's finding on permanent parcel disability. We take issue with the commission's finding. First of all, its order on its face is not correct. In order to get around the manifest weight of the evidence burden, the judge indicated that quote the commission totally ignored the doctor's reports. Excuse me, let me just interrupt you. Because it's being recorded and you may not want this error to persist. You said you take issue with the commission's finding. I take issue with the circuit court's finding on permanent parcel disability. Thank you for correcting me. The circuit court order, the judge when rendering the decision, indicated that the unanimous commission totally ignored the doctor's reports. While on its face, it's not accurate. If you look at the arbitrator's decision with the unanimous commission affirmed, it's in there. The reports of Dr. Mandela, the treating physician, and Dr. Cohen, the IME physician, they're discussed in there. What did Mandela and Dr. Cohen opine? Did they say that he was permanent? They were asked questions on accident causation. They were not asked whether there was any permanent parcel disability associated with this claim. I think the fair reading of their depositions were Dr. Mandela did a good job, he had a good result from the surgery. Dr. Cohen, in his IME report, noted complete resolution of the carpal tunnel symptomology. So on its face, I think the circuit court is wrong. Secondly, nowhere does the circuit court talk about the substantial deference that is given to the commission who are the experts on permanent parcel disability. And lastly, manifest way to the evidence. There's more than sufficient evidence in the record to support the claim. As mentioned before, Dr. Mandela and Dr. Cohen all indicate the claimant had a good result from these surgeries. His left carpal tunnel release was in October 5th of 2010. His right carpal tunnel release was in October 26th of 2010. He was back working full duty on November 15th of 2010. Not only full duty, but there was a lot of testimony on the issue of accident causation about what his job consisted of. In the record, the claimant testifies at length about how repetitive his job is, how hand intense his job is, physical labor, he's using tools, he's opening these hopper trailers. There's evidence that this is a demanding job. At the time of trial, he had been working in that capacity for over a year. I think it was a year and four months. So he had ample time to test his hands and he was able to work that job in a full duty capacity. And then, as you know from reading the brief, when asked, how are you doing? You've been working in this fumigator position, the same position before the surgeries. How are you doing now? In his testimony, as you know, he indicated he's 100% better. A follow-up question, any numbness or tingling? No. Now, the numbness and tingling, and I think counsel will talk to you about this in his argument, when he saw Dr. Mandela a few months after his surgery for the last time in November 22nd of 2010, Dr. Mandela indicated he still had a little bit of numbness in some of his fingers, maybe some sensitivity to scar tissue. But he was recovering well enough, he was back working full duty. Dr. Cohen saw him for a Section 12 exam on April 6th of 2011, and that's when Dr. Cohen documented the complete resolution of the carpal tunnel symptomology, so the numbness was going away. Dr. Cohen noted maybe some sensitivity to scar tissue, and then he noted that this was resolving nicely on its own, and to continue to massage it. And then when this case proceeded arbitration in April 2012, by petitioner's testimony, he had no symptoms, he was 100% better, and those residual symptoms temporary and had resolved at the time of trial. So, more than enough evidence to support the unanimous decision of the commission, and I'd ask that you reinstate that. Thank you, counsel. Counsel, you may respond. May it please the court, Mr. Beamer. My name is Craig Smith, and I represent the petitioner. I think what the circuit court did in his analysis was he pointed out that he did review the arbitrator's decision. And in the review of the arbitrator's decision, there is not one sentence or indication of the findings of Dr. Mandela and Dr. Cohen on what was going on with this man's hands. We've got to remember that he had bilateral carpal tunnel releases. So, he's got scars, he's got scar tissue, he's got a thing called dysthesia, and that is more than just a numbness, it's an actual tingling and sensation to his fingers. Well, is it accurate at the time of the arbitration hearing that your client indicated that he had no issues with tingling or numbness? He said he had no issues with numbness, and he felt 100% better. Or tingling. And it may have said tingling as well. So, really what you're left with, then, in terms of the circuit court's decision is you've got scar and scar tissue. Is that right? You have scar and scar tissue, and you've got some massaging that's going to be taken care of. You've got pillar pain that Dr. Iame referred to, but is nowhere in the record. Well, is there any evidence in the record that any of this was disabling to any degree? Not through Petitioner's testimony, only through the doctor's testimony. The doctors are talking about pillar pain and talking about doing some transfrictional massaging to get over the pillar pain. Just very succinctly, then, could you tell us what the from which the circuit court was able to make a PPD award on? Dysesthesia of the thumb and the index finger. Tenderness over the incision of the scar. Pillar, pillar, which was in his decision, which he wrote. He said also that he had, that he would benefit from this continued relief with this pain that he's having in the pillar pain of both hands. Those were the things that were bothering the Petitioner, according to the doctors. Now, I admit that what the Petitioner says, I feel a hundred percent better and I don't have any numbness or tingling. I think that once he said that, then the arbitrator didn't put a thing in the decision about what the doctors were saying, what they noticed when they saw him, what they were talking about, what he was going through, and what he would continue to have. And he continues to have a deep scar. He continues to need a scar revision. And he continues to have, based upon the medical that was not in the arbitrator's decision, this type of a loss of sensation to his fingers and his thumb. That, I think, is not in the record of the arbitrator's decision, but it was in Judge Garf's record when he did his analysis based upon, and he specifically quoted from the doctors, their history, their physical exam, their recommendations, what they found. Both doctors, his findings are completely different than the arbitrator's because the arbitrator doesn't have any of it. Nothing about what the doctors found in their examination following the search. I think that's enough that the arbitrator, not the arbitrator, but the circuit court felt that the arbitrator and the commission dismissed it. They dismissed the findings of the doctors because of the petitioner saying, I feel 100% better. So I think there's enough that the judge felt in his decision, in his analysis, which is what he was finding, other than tingling and numbness. There was more than just that. And besides that, anytime you're cut, there's always going to be scar and scar and revision and scar tissue. Well, that's my point. Don't you need to have more evidence than just the existence of scars to have an award of PPD? Well, not necessarily because you've got something entirely different in your hand now. You've got scar tissue that both doctors in their reports talk about ongoing treatment that he's going to continue to need to take care of this pain. Does that mean himself that he's permanently disabled? Do the scars mean he's permanently disabled? No, he's not permanently disabled. He's partially disabled. The scars mean he's automatically... Not the scars, but the doctor's notes that said, pillar pain and the scars leading to the pillar pain. The pillar pain is led to and caused by the scar. That's in Dr. Cohen's record. That's the IME. That's also in Dr. Mandela's records, but it's not mentioned in the arbitrator's decision. He didn't mention anything about what the doctors found and what they talked about that this man would have ongoing. There was nothing in the record. That's why the circuit judge, in my opinion, changed the course of the decision by saying they did not consider, they, the arbitrator and the commission, did not consider the doctor's It's void of it. They don't mention it. Did your client testify at the arbitration hearing of any continuing pain in his hands or wrists? No. Is that important? I don't think it's important based upon the fact that the doctors are referring to pain that he was having during their last, their examinations. During the last examination of the treating physician and also the subsequent surgery. So I think you have to take it, it's the whole record in this case, and the whole record is the physician's testimony plus the medical finding of the doctors, not just my doctor, but also the IME doctor. Thank you. Very briefly, I think the problem with this claimant is, you've got to look at the timing of when Dr. Mandela and Dr. Cohen saw this individual following surgery. Dr. Mandela saw him months, a few months after surgery for the last time. Claimant's complaints continued to improve by the time he saw Dr. Cohen. In fact, Dr. Cohen documents complete resolution of the carpal tunnel syndrome symptoms. And then Dr. Cohen notes that the scar sensitivity continues to improve. By the time we get to arbitration a year later, the inference is, by the claimant's testimony, that he's completely better. You can't get better than a hundred percent. And if he had the opportunity to talk about the numbness or tingling, it's gone. There is none. So the inference is, just like Dr. Cohen expected, this will completely resolve, it's a nerve injury, and it did. Again, based on the manifest way of the evidence, I think there's more than sufficient evidence to support the unanimous commission's decision. Thank you. Thank you, counsel, both for your arguments in this matter. We'll take an advisement. This position shall issue. The court will stand in recess, subject to call.